UNITED STATES of America, Appellee,

v.

Brian Eugene SAWYERS, Appellant.

UNITED STATES of America, Appellee,

v.

Wilbert Odell RICHARDSON, Appellant.

UNITED STATES of America, Appellant,

v.

Brian Eugene SAWYERS, Appellee.

Nos. 91–1707, 91–1709 and 91–1879.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1991.

Decided April 16, 1992.

Rehearing Denied June 4, 1992.

Edna R. Atkins, Omaha, Neb., argued, for appellant Brian Eugene Sawyers.

Bernard L. McNary, Omaha Neb., argued, for appellant Wilbert Richardson.

Paul D. Boeshart, Lincoln, Neb., argued, for appellee.

Before LAY,* Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

LAY, Chief Judge.

Brian Sawyers and Wilbert Richardson appeal their convictions of conspiracy to distribute and possession with intent to distribute over five kilograms of cocaine pursuant to 21 U.S.C. § 846 and § 841(a)(1) (1988). The district court [1] sentenced the defendants to 121 months and 51 months respectively. On appeal, Sawyers and Richardson argue that the court wrongfully admitted government evidence obtained through the use of wiretaps which were

---

\* The HONORABLE DONALD P. LAY was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

not immediately sealed as required under 18 U.S.C. § 2518(8)(a) (1988); the court erred by not giving the multiple conspiracy instruction submitted by defendants; and the jury's verdict was not supported by sufficient evidence. Sawyers also maintains that the court wrongfully denied his request for severance, violated his right to a speedy trial and violated his due process rights. Richardson contends the court erred by not granting him a two-point sentence reduction for taking affirmative responsibility for his actions. The government cross-appeals, arguing that in sentencing the court mistakenly determined that no "base" cocaine could be attributed to Sawyers. We affirm the judgment and sentences of both defendants.

Sawyers began transporting cocaine from California to Omaha, Nebraska, in May of 1988 when he delivered ten ounces of cocaine to Kenny Blue and his wife Robin Blue, active drug dealers in the Omaha area. Following this delivery, Sawyers enlisted the aid of Richardson to help him supply the Blues' distribution network. In late June of 1988, Richardson flew to California and gave Sawyers approximately $5,000.00 in exchange for 495 grams of powder cocaine. Upon his return to Omaha, Richardson was arrested at the Omaha airport by police who had learned of his dealings through the wiretaps in question.[2] Sawyers, a California resident who was removed from a California State Prison for trial, was indicted along with Richardson and eleven others in July of 1989. Of the original thirteen defendants, nine entered into plea bargain agreements (including Kenny and Robin Blue), one is still at large, one was acquitted (Bernard Turnbo) and Sawyers and Richardson were convicted after a jury trial on November 8, 1990.

COMMON CLAIMS

Pursuant to 18 U.S.C. § 2518(8)(a), recordings obtained through wiretaps may not be disclosed unless they are sealed "[i]mmediately upon the expiration of the period of the order," or a "satisfactory explanation" for the delay is presented. In *United States v. Rios,* 495 U.S. 257, 265, 110 S.Ct. 1845, 1850, 109 L.Ed.2d 224 (1990), the Supreme Court held that in order to present a satisfactory explanation for a sealing delay, the government must explain "not only why a delay occurred but also why it is excusable." The Second Circuit has expanded upon *Rios,* holding that a pre-*Rios* delay is excusable if (1) the government has advanced a reason for the delay, such as the need to perform administrative tasks relating to the tapes prior to sealing; (2) there is no basis to infer that the government sought the delay in order to gain a tactical advantage; and (3) there has been no showing of tampering or any other prejudice to the defendant. *United States v. Maldonado–Rivera,* 922 F.2d 934, 950 (2d Cir.1990) (quoting *United States v. Rodriguez,* 786 F.2d 472, 477 (2d Cir.1986)), *cert. denied,* —— U.S. ——, 111 S.Ct. 2858, 115 L.Ed.2d 1026 (1991). The court added that a delay caused by an "erroneous understanding of the law" may also be excusable if the law "has not been settled and the misunderstanding is not otherwise unreasonable." *Maldonado–Rivera,* 922 F.2d at 950.

In reviewing the reasons advanced for the sealing delay and the questions of historical fact, such as the date on which the wiretap authorization terminated and the date on which the tapes were sealed, we will not disturb the district court's findings unless they are clearly erroneous. The matter of whether the government's reasons are satisfactory, however, is a question of law subject to plenary review. *Id.* at 949–50.

■ In the present case, it is undisputed that the government failed to seal the recordings in a timely manner: The first

2. The Omaha police monitored Blue's home phone and cellular car phone. Wiretap authorizations were issued by a state district judge on June 16 (residence), July 6 (cellular car phone) and July 26 (residence again); each was valid for a period no longer than necessary to achieve the objective of the authorization, and in any event, no longer than 30 days. The wiretaps were terminated on July 15, August 7 and August 9 respectively. All of the recordings obtained through these wiretaps were sealed under the state judge's direction on August 17, 1988. No allegations of tampering have been made.

wiretap authorization expired thirty-two days before the tapes were sealed by a state district judge; the second authorization expired twelve days before sealing; and the third expired eight days before sealing. County Attorney Robert Sigler explained that he did not seal the tapes immediately upon termination of the wiretap authorization because he believed the "immediacy" requirement for sealing wiretap evidence to be analogous to the ten-day requirement for the return of physical evidence obtained through a search warrant. Sawyers and Richardson urge that Sigler's explanation is not a "sufficient excuse" in light of the clear meaning of the word "immediately." Furthermore, the defendants argue, Sigler failed to act in accordance with his own rule by not returning the tapes obtained through the first two wiretaps within ten days after their respective authorizations expired. Sawyers and Richardson rely on *United States v. Feiste*, No. CR. 89-0-115 (D.Neb. Feb. 7, 1991) (order granting motion to suppress), which we affirm this date, 961 F.2d 1349 (8th Cir. 1992), where the district court ordered the suppression of wiretap recordings as not timely sealed.

While defendants correctly point out that the county attorney presented a similar excuse for the untimely sealing of the tapes in *Feiste*, we find that case distinguishable. Only one wiretap authorization was obtained in *Feiste*; there were three different authorizations in the instant case. The authorization in *Feiste* expired thirty-one days before the tapes were sealed; here, the last authorization expired eight days before the tapes were sealed. Most importantly, the custodian of the tapes in *Feiste*, Omaha Police Officer James Murray, testified that he believed Nebraska law to require that the tapes be sealed, without exception, upon the completion of the investigation, and that *he erred in not*

*complying with this law.* In the present case, County Attorney Sigler testified that he believed the subsequent wiretap authorizations were extensions of the original authorization since it was all part of one investigation and therefore, the authorization did not expire until eight days before the tapes were sealed.[3]

In *Rios*, the Supreme Court made clear that in order to establish a reasonable excuse, "the Government is not required to prove that a particular understanding of the law is correct but rather only that its interpretation was objectively reasonable at the time." 495 U.S. at 266, 110 S.Ct. at 1851. In *Maldonado–Rivera*, the Second Circuit held that sealing delays of fifteen, sixteen and nineteen days did not mandate suppression of the recordings since the government's excuse for the delay was objectively reasonable at the time. 922 F.2d at 951–52. As in the instant case, the government in *Maldonado–Rivera* explained that the nineteen-day delay resulted from the supervising attorney's belief that "if the interceptions at various locations were interrelated, the statute required sealing only when there existed a hiatus in the electronic surveillance orders considered as a group." *Id.* at 951. Though this explanation "was based on an erroneous interpretation of the law," the Second Circuit emphasized that "[i]t is within the province of the district court to make determinations as to credibility, and we conclude that its findings as to the reasons for the delay and the lack of bad faith are not clearly erroneous." *Id.* at 952; *see also United States v. Principie*, 531 F.2d 1132, 1142 n. 14 (2d Cir.1976) (order issued after expiration of initial authorization regarded as an extension where it involved the same persons and premises), *cert. denied*, 430 U.S. 905, 97 S.Ct. 1173, 51 L.Ed.2d 581 (1977); *see generally, United States v. Mora*, 821 F.2d

---

**3.** Though Sigler appears to have supervised the sealing process in both cases, the district court in *Feiste* found that the custodian of the tapes, Officer Murray, assumed responsibility for the sealing of the tapes and the delay which occurred. Here, Sigler testified that he "felt it was [his] duty in these wiretap situations, as the person in our office charged with advising the

Police concerning these things, to insure that the originals of the recordings ... should be returned to the Judge issuing the wiretap." Tr. at 503. Unlike *Feiste*, there is no evidence in the instant case that the officer in custody of the tapes, Virgil Setterlund, was responsible for the sealing delay.

860, 870 (1st Cir.1987) (delays of twenty and forty-one days allowed where officials were ignorant of the sealing requirement and preoccupied with other trials); *United States v. Rodriguez,* 786 F.2d 472, 478 (2d Cir.1986) (fourteen-day delay excusable due to prosecutor's belief that written reports needed to be submitted with the tapes at the time of sealing). In light of this authority, we hold that the county attorney's belief that each wiretap authorization constituted an extension of the original authorization was objectively reasonable at the time of the delay. We affirm the district court's ruling on defendants' motion to suppress.

Sawyers and Richardson also contend that the district court erred in failing to give their requested instruction on a multiple conspiracy. Defendants argue that the instruction given, even though including reference to multiple conspiracy, was long, complex and extremely difficult to understand. Furthermore, defendants urge, the instruction emphasized the prosecution's theory by repeating it several times, while the defendants' theory (that multiple conspiracies existed and that defendants were part of a different conspiracy than that for which they stood trial) was not made sufficiently clear.

█ A court is granted great latitude in formulating its instructions to the jury. *United States v. Figueroa,* 900 F.2d 1211, 1216 (8th Cir.), *cert. denied,* 496 U.S. 942, 110 S.Ct. 3228, 110 L.Ed.2d 675 (1990). Here, the court's instruction served its essential purpose as it correctly stated the law on conspiracy and adequately conveyed the defendants' theory that they were not part of the single overall conspiracy with which they were charged. The instruction stated in pertinent part as follows:

If you find that the government has failed to prove the existence of the conspiracy charged in the second superseding indictment, you must find all the defendants not guilty, even if you are convinced that the defendants, or any one of them, were members of one or more separate or different conspiracies not charged in the second superseding indictment.

In *Figueroa,* we upheld a very similar instruction[4] since it "correctly stated the law on multiple conspiracies and sufficiently conveyed the principles urged by defendants." 900 F.2d at 1217. Thus, we find that the trial court was clearly within its discretion in issuing the instruction in question.

█ Finally, the defendants argue that the evidence presented at trial was insufficient to support their convictions of conspiracy. However, the record shows that both Kenny and Robin Blue presented testimony indicating that defendants knowingly entered into agreements to help supply the Blues with cocaine from California. Thus, we find sufficient evidence to sustain this conviction.

## INDIVIDUAL CLAIMS

█ Sawyers contends that his right to a fair trial was violated when the court denied his request to sever his trial from the trial of Turnbo and Richardson. As long as the indictment charges all defendants with involvement in a single conspiracy, joinder of the defendants is appropriate under Federal Rule of Criminal Procedure 8(b). *United States v. Davis,* 882 F.2d 1334, 1340 (8th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990). Here, all of the defendants were charged with the same conspiracy, involving much of the same evidence, and Sawyers failed to prove he was prejudiced by the procedure. *See* Fed.R.Crim.Proc. 14.

**4.** As relevant to the instant case, the *Figueroa* instruction stated as follows:

If the government has failed to prove beyond a reasonable doubt the existence of the conspiracy which is charged, then you must find the defendants not guilty, even though some other conspiracy might have existed.

Likewise, if the government has failed to prove beyond a reasonable doubt that defendant was a member of a conspiracy which was charged, then you must find that defendant not guilty, even though he may have been a member of some other conspiracy. 900 F.2d at 1217.

■ Sawyers further maintains that his trial was delayed for ten months in violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq. However, the record shows the seventy-day limit was tolled by pretrial motions raised by defendants. *See United States v. Massa*, 740 F.2d 629, 647 (8th Cir.1984), *cert. denied*, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). Thus, we find that Sawyers was tried within the seventy-day requirement put forth in section 3161.

Similarly, Sawyers contends that under the Interstate Agreement on Detainers Act, 18 U.S.C. app. II § 2, art. III(a), he was entitled to a trial within 180 days of his notice and demand for disposition, which was submitted to the proper authorities in October of 1989, almost a full year before trial. Again, the time limit is tolled during those periods when pretrial motions are pending. *United States v. Roy*, 830 F.2d 628 (7th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988). Thus, Sawyers' contention is without merit.

■ We also find no merit to Sawyers' argument that the court erred in its use of the writ of habeas corpus ad prosequendum to secure Sawyers' presence before the court without affording him a removal hearing in California pursuant to Rule 40 of the Federal Rules of Criminal Procedure. Rule 40 is not applicable to the transfer of a federal prisoner to another district to stand trial pursuant to a writ of habeas corpus ad prosequendum. *Bandy v. United States*, 408 F.2d 518, 521 (8th Cir.), *cert. denied*, 396 U.S. 890, 90 S.Ct. 180, 24 L.Ed.2d 164 (1969).

■ Finally, Richardson argues the district court erred by not granting him a two-point sentence reduction for taking affirmative responsibility for his acts. Richardson urges that the record shows that he accepted responsibility for all of his criminal conduct. Since Richardson took none of the actions listed in the commentary to U.S.S.G. § 3E1.1, we do not find that the district court was clearly erroneous in holding that Richardson did not demonstrate recognition and affirmative acceptance of personal responsibility for his criminal conduct.

## CROSS–APPEAL BY THE GOVERNMENT

On the government's cross-appeal, it is urged that the district court's refusal to attribute any cocaine to Sawyers was clearly erroneous. We have reviewed the record and the briefs and we find the district court's refusal to assess any base cocaine to the defendant was largely based upon the court's finding that the proffered evidence lacked credibility. On this basis, we decline to set aside the trial court's finding.

For the foregoing reasons, we affirm the district court's judgment on all issues.

Judgment affirmed.