**UNITED STATES COURT OF APPEALS**
**Filed 2/7/96**
**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

      v.

JAMES WESLEY CHAPMAN,

      Defendant - Appellant.

No. 95-1140

D. Colorado

(D.C. No. 94-CR-267-S)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON, BARRETT**, and **LOGAN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. This cause is therefore ordered submitted without oral argument.

James Wesley Chapman, appearing pro se, appeals from his conviction and 41 month sentence for attempted escape from a Bureau of Prisons Institution, in violation of 18 U.S.C. § 751(a). We affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## BACKGROUND

Mr. Chapman was convicted and sentenced to imprisonment for conspiracy to manufacture methamphetamine with intent to distribute, possession of methamphetamine with intent to distribute, manufacture and attempted manufacture of methamphetamine, and aiding and abetting, all in violation of various federal laws. His conviction was affirmed by the Ninth Circuit Court of Appeals in an unpublished opinion, and the Supreme Court denied his petition for certiorari. United States v. Chapman, No. 91-50724, 1992 WL 379409 (9th Cir. 1992), cert. denied, 114 S. Ct. 222 (1993). Mr. Chapman has not filed any habeas petitions.

While incarcerated at the Federal Correctional Institution at Florence, Colorado Mr. Chapman attempted to escape on May 12, 1994. There appears to be no dispute about the facts surrounding the escape attempt. The escape attempt failed, and Mr. Chapman was subsequently indicted for one count of attempted escape.

There followed a series of motions filed by Mr. Chapman, sometimes proceeding pro se and sometimes represented by counsel. Several of them related to a claimed defect in the composition of the master jury wheel from which Mr. Chapman's grand jury and petit jury were drawn. Another defendant in another case, whose jury was drawn from the same master wheel as Mr. Chapman, had made the same arguments relating to the jury wheel to a different district court judge, who had already heard arguments on the matter. United States v. Bailey, 862 F. Supp. 277 (D. Colo. 1994), aff'd in part, rev'd in part, No.

95-1004, ___ F.3d ___ (10th Cir., Feb. 2, 1996). Mr. Chapman incorporated the <u>Bailey</u> case arguments in his own motions.

The district court heard argument on Mr. Chapman's various motions at a January 9, 1995, hearing. The court first addressed Mr. Chapman's motions concerning the jury wheel. Mr. Chapman argued that there were some errors and omissions in the <u>Bailey</u> hearing, and he sought appointment of a statistician and a private investigator. The court took the jury wheel motions under advisement. The court then addressed Mr. Chapman's motions to dismiss the indictment because his escape attempt was justified by the doctrine of necessity or, alternatively, to permit him to argue necessity as a defense. The court ruled that Mr. Chapman was not entitled to the defense of necessity and therefore denied his motions. The court granted Mr. Chapman's <u>Brady</u> motions for discovery of material evidence, particularly relating to any deals or inducements made to government witnesses, both in this case and in prior cases.

The court issued a memorandum opinion and order on the jury wheel issues, ultimately concluding that any errors in the master jury wheel did not constitute a "substantial failure to comply" with the Jury Selection and Service Act, 28 U.S.C. §§ 1861-1869. It denied all of Mr. Chapman's motions relating to the jury wheel.

Mr. Chapman thereafter proceeded to trial represented by counsel. The jury found him guilty of attempted escape, and he was sentenced to 41 months imprisonment, to run consecutively to his term for the drug violations. He appeals, arguing: (1) the district

court erred in denying his motion to dismiss the indictment because his escape attempt was legally justified under the doctrine of necessity; (2) the district court erred in denying his motion seeking permission to present necessity as an affirmative defense; (3) the district court erred in denying him access to the master jury list and in denying him a hearing in which to challenge the composition of the jury list; and (4) the prosecution failed to disclose to him evidence which he could have used to impeach government witnesses.

**DISCUSSION**

## I.  Necessity Defense:

Mr. Chapman argues that the district court erred in denying his motion to dismiss the indictment on the ground of necessity, and in denying his motion seeking permission to present necessity as an affirmative defense.  We review the denial of both motions for abuse of discretion.  United States v. Meraz-Valeta, 26 F.3d 992, 995-96 (10th Cir. 1994); see also United States v. Seward, 687 F.2d 1270, 1276 (10th Cir. 1982) (en banc) (reviewing denial of defense of necessity for abuse of discretion), cert. denied, 459 U.S. 1147 (1983); United States v. Kingston, 971 F.2d 481, 490 (10th Cir. 1992) (reviewing denial of motion to dismiss indictment for abuse of discretion).  We hold that the district court did not abuse its discretion in the denial of either motion.

Mr. Chapman argues that, because he believes his underlying drug convictions were fatally flawed, and his appeals from them were unsuccessful, necessity compelled his escape from what he views is an unlawful confinement. Other than his direct appeal to the Ninth Circuit, and his unsuccessful petition for certiorari to the United States Supreme Court, he concedes he has pursued no other legal challenges to his convictions. As we have previously stated:

> a defendant may successfully use a defense of necessity to excuse an otherwise illegal act if (1) there is no legal alternative to violating the law, (2) the harm to be prevented is imminent, and (3) a direct, causal relationship is reasonably anticipated to exist between defendant's action and the avoidance of harm.

Meraz-Valeta, 26 F.3d at 995. The Supreme Court has stated in a case, like this one, involving necessity as a defense to a charge of prison escape, that "one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defense [of necessity] will fail." United States v. Bailey, 444 U.S. 394, 410 (1980) (internal citation omitted).

In this case, there were "reasonable, legal alternative[s] to violating the law." Id. For example, Mr. Chapman could have pursued a 28 U.S.C. § 2255 action, if he believed his underlying convictions were fatally flawed. In any event, Mr. Chapman was incarcerated pursuant to a valid conviction at the time of his escape attempt. His failure to obtain the relief he seeks by the usual, legal avenues of appeal and collateral review

does not justify his attempted escape, on the ground of necessity or any other theory. See United States v. Roy, 830 F.2d 628, 638 (7th Cir. 1987) ("[A]cquittal on the charges for which the defendant was held in custody at the time of the escape is not a defense to the escape charge under 18 U.S.C. § 751(a)."), cert. denied, 484 U.S. 1068 (1988); United States v. Allen, 432 F.2d 939, 940 (10th Cir. 1970) (per curiam) ("[N]either the regularity of [a defendant's] arrest nor the propriety of his confinement can be tested by an act of escape."). The district court did not err in denying his motion to dismiss the indictment or his motion to present the defense of necessity.

## II. **Jury Wheel issues**:

Mr. Chapman also argues the district court erred in denying him access to the master jury wheel from which his jury was selected and in denying him a hearing in which to challenge the composition of the jury wheel. Both the grand jury which indicted Mr. Chapman on the escape charge, and the jury which convicted him on that charge, were selected from the Denver Division master jury wheel compiled in October 1993. The selection and composition of that master jury wheel were challenged in the Bailey case, on the ground that an undisputed error by the clerk who compiled the jury wheel caused the jury wheel to be in violation of the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861-1869. After conducting a hearing and taking extensive testimony and evidence, the district court in Bailey held that the errors "were technical in nature and did

not constitute a substantial failure to comply with the Jury Selection Act." Bailey, 862 F. Supp. at 285. We affirmed that conclusion, stating that "the clerk's errors in determining the number of registered voters for several counties in the Colorado district did not amount to a substantial failure to comply with the provisions of the Jury Selection Act." Bailey, __ F.3d at ___.

Mr. Chapman relied heavily on the defendant's allegations in Bailey in support of his challenge to the same jury wheel in this case. In the January 9, 1995, hearing on his various motions relating to the jury wheel, Mr. Chapman attempted to argue that he had some objections to the jury wheel which were not addressed in Bailey. However, we agree with the district court's observation that Mr. Chapman "offered no specific proof, but merely stated his vague and conclusory allegations of other possible errors in the master jury wheel." Mem. Op. and Order at 2, R. Vol. I at Tab 22. Our opinion in Bailey conclusively resolves the issue of whether the particular master jury wheel from which Mr. Chapman's juries were selected violated the Jury Selection Act. We follow Bailey's conclusion that it did not, and Mr. Chapman has presented no reason why that conclusion should not also resolve his jury wheel arguments, without the necessity of further hearings or further argument. We therefore affirm the district court's denial of Mr. Chapman's motions relating to the master jury wheel.

### III. Brady violation:

Mr. Chapman's final argument involves an alleged violation by the government of its duty under Brady v. Maryland, 373 U.S. 83 (1963), to disclose material evidence favorable to the accused. We review de novo claimed Brady violations. United States v. DeLuna, 10 F.3d 1529, 1534 (10th Cir. 1993).

At trial, a number of other inmates testified for the government about Mr. Chapman's actions in connection with the escape attempt. They also testified that they had been offered no promises of favors or compensation by the government in exchange for their testimony. Mr. Chapman asks us to "take judicial notice that the government's witnesses, after testifying at trial that they'd indeed received no promises of favors or compensation from the government in exchange for their giving testimony in this trial, received 'protective order' transfers . . . to select camps in California, Oregon, Nevada and or Arizona." Appellant's Br. at 19. These transfers apparently took place one month after Mr. Chapman's trial.

"'[T]o establish a Brady violation, the defense must prove that: (1) the prosecution suppressed the evidence; (2) the evidence would have been favorable to the accused; and (3) the suppressed evidence is material.'" DeLuna, 10 F.3d at 1534 (quoting United States v. Wolf, 839 F.2d 1387, 1391 (10th Cir.), cert. denied, 488 U.S. 923 (1988)). The materiality requirement is met "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" United States v. Bagley, 473 U.S. 667, 682 (1985).

Beyond his conclusory allegation, Mr. Chapman presents no evidence that the government suppressed any evidence of any deals or promises.  Further, we agree with the government that, even were we to find that evidence was not disclosed, such evidence is not material, because there is no reasonable probability that disclosure would have caused a different result in the proceeding.  The evidence against Mr. Chapman was strong and unchallenged.  Mr. Chapman himself does not argue that he is in fact innocent of the crime for which he was convicted.  Any additional impeachment value from disclosure of these alleged promises of favorable treatment would not have altered the outcome of the proceeding.[1]

---

[1]As the government points out, most of the government witnesses were questioned about any promises or inducements offered in exchange for their testimony, and they testified that they were actually reluctant to testify, because of a fear of being considered a government informant in prison.  This testimony does nothing to strengthen Mr. Chapman's conclusory allegation that the witnesses' subsequent transfers indicate that the government offered them secret deals *in advance* in exchange for their testimony.  Indeed, that testimony is more consistent with the conclusion that the witnesses' fears proved true, and they were transferred from the facility in which Mr. Chapman resided to protect them from retaliation for their testimony against him.

For the foregoing reasons, Mr. Chapman's conviction and sentence are

AFFIRMED.[2]   The mandate shall issue forthwith.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

_____

[2]Mr. Chapman has filed motions seeking to supplement his opening brief with a description of and reference to a supplemental appendix and to file a supplemental appendix.  Those motions have been referred to this panel.  We grant the motions.